## PITMAN v. THE TOWN OF ALBANY.

The judgment of the court of common pleas, upon the report of a committee appointed under the provisions of chap. 37, sec. 6, of the Revised Statutes, which empower that court to establish the disputed boundary line between two adjoining towns, is a judgment *in rem*, and conclusive upon all persons.

The effect of such judgment is not merely prospective. It is an adjudication not only of where the line *is*, but where it always *has been*, since it was established by the incorporation of the towns; and is therefore conclusive upon the parties in a suit against one of the towns, pending when the judgment was rendered, and in which is involved an inquiry into the true location of the boundary.

The proceedings of the selectmen of the adjoining towns, in perambulating the line and renewing the marks and bounds, are not conclusive evidence of its true location.

CASE, for an injury from an alleged defect in the highway.

The injury occurred in a highway near the town line between the towns of Albany and (formerly) Eaton, (now) Madison, in the county of Carroll. There was evidence tending to show that down to the time of the accident in question the line, as claimed by Albany, had been treated and recognized by Albany and Eaton as the true boundary; that prior to 1850, Eaton had built the road at the place where the accident happened, and up to the line as now claimed by Albany, and this had been recognized as the true line by the owners of land abutting on it. It also appeared that after the accident another line was discovered and set up by Madison as the true line between the towns. The place where the accident occurred is about midway between the two lines, and if the north line, as claimed by Albany, is the true boundary, the place of the accident is in Madison; if the south line, as contended for by Madison, is the true boundary, then the place of the accident is in Albany, and the plaintiff is entitled to recover in this suit.

The defendants introduced copies of records of the Court of Common Pleas for Carroll county, from which it appeared that after the commencement of this suit proceedings had been instituted in said court under the provisions of chap. 37, sec. 6, Revised Statutes, for establishing the boundary between said towns

of Albany and Madison ; that said court had appointed a committee to examine the lines in dispute, who had duly notified, met and heard the parties ; made examination of the lines, and had adjudged and established the line claimed by Albany as the true boundary, and that judgment had been rendered upon their report, made to said court at the November term thereof, 1855.

The court ordered a verdict for the defendants, which the plaintiff moves to set aside on the ground that said judgment is not conclusive upon the parties to this suit.

*Burns & Fletcher*, for the plaintiff.

It does not appear, and it is not to be presumed, that the plaintiff had any notice of the proceedings between Albany and Madison, in the court of common pleas, or before the committee.

It is a general principle that the rights of a party are not to be concluded by proceedings *inter alios*. If the plaintiff had been notified, or had appeared before the committee, submitted evidence, offered argument, or done such acts as parties usually do to vindicate their rights, he might possibly be barred by the finding of the committee, although the controversy purported to be, and was in fact, between the towns.

The plaintiff brought his action against Albany, and has the right by law to have every question of fact that may arise in the cause tried by a jury. His rights are not to be adjudicated by a committee or other tribunal acting between other parties, and in a proceeding instituted after his action against Albany had been commenced. *Hanson* v. *Russell*, 8 Foster 116.

*Haywood*, with whom was *Benton*, for the defendants.

The question in this case is, whether the adjudication as to the boundary by the court of common pleas is conclusive. The case of *Hanson* v. *Russell*, 8 Foster 111, is a strong authority in favor of this position.

It is now settled that the place where the injury occurred is in the town of Madison. That adjudication was made upon one of two grounds, either that the place was within the original

chartered limits of Eaton, (now Madison,) or because that town has exercised jurisdiction up to the north line (which includes the place of the accident) for so great a length of time that this has become established as the true limit.

Now if the decision went upon the ground that Eaton, as originally chartered, included this place, there is no ground upon which to question the conclusiveness of the decision, for then the land was originally in that town, and Albany never exercised jurisdiction over it.

The road in question was built by Eaton; and we think if the adjudication went upon the ground that Madison (formerly Eaton) exercised jurisdiction up to the north line for so great a length of time as to make that practically the jurisdictional line, then it is equally conclusive, because the case shows that the jurisdiction of Eaton was acquiesced in until after the accident, and then the inhabitants of that town, finding the south line, insisted upon that as the true boundary. This ground was taken by them in order to avoid liability to this action. It is clear, therefore, that the south line, if ever established by acquiescence, was so established before this cause of action accrued. Suppose an action were now commenced against Madison for the injury, would not the adjudication be conclusive upon that town? And if Madison is liable for the injury, can Albany, by any possibility, be also liable? We think it clear that they cannot be.

SAWYER, J. By the act of the sixth of February, 1791, Laws of 1805, p. 195, the lines between towns were required to be perambulated, and the marks and bounds renewed, within two years from the passage of the act, and once every seven years thereafter, by the selectmen of each town, or by some person or persons to be by them appointed for that purpose.

No provision was made by this act, or by any subsequent legislation, until the passage of the act of the twenty-third of December, 1820, 2 N. H. Laws, 1824, p. 46, for the case of a disagreement between the selectmen of the two towns in proceeding to make the perambulations required. This act of 1820 provided

that in case of such disagreement the Court of Sessions, on petition for that purpose, should proceed to settle and establish the line in dispute, and renew the marks and bounds, upon examination made by the judges of that court personally, or by a committee, and that the judgment of the court should have the same force and effect as the agreement of the selectmen. The provisions of these acts in their literal terms were reënacted in the act of the twenty-sixth of June, 1827, Laws of 1830, p. 444, which continued in force until the revision of the statutes in 1842; the Court of Common Pleas being substituted in place of the Court of Sessions, as the tribunal to settle the question in case of disagreement by the selectmen, and their duties and powers being exercised personally or by committee in precisely the same mode as that prescribed for the Court of Sessions. Their judgment, also, was to have the same effect as that of the latter court, it being declared in the act that their judgment, being recorded at length, was to have the same force and effect as would the agreement of the selectmen. What the force and effect of an agreement of the selectmen were to be, was not expressly declared by either of these statutes. It was left by them to judicial interpretation. The object and intention of the legislature in these enactments could have been only to provide a mode for supplying fresh evidence, as often as once in every seven years, of the town lines, by a renewal of the old monuments and marks which fixed their location. The authority of the selectmen was in terms confined to renewing such marks and bounds — reviving the lost or doubtful evidence upon the land itself of the true boundary. The acts did not contemplate a negotiation by the selectmen in behalf of their respective towns for establishing a line, or an adjudication by the joint boards upon the question when it admitted of controversy or doubt. They were required to assent to and coöperate in the renewal of the marks and monuments upon the line which they understood to be the true and established boundary. Their proceedings were therefore ministerial rather than judicial. They were not required to be had upon notice and a hearing of parties inter-

ested — were not usually conducted with any of the formalities ordinarily attending an adjudication which is to conclude the rights of parties, and have never been understood to be in their character any thing more than a renewal or reviving of the evidence which once existed to show where the boundary was, but which lapse of time and the changes to be anticipated in a series of years upon the face of the land, in felling trees and otherwise removing the marks which indicate the line, might tend to efface or render doubtful. It cannot be understood that it was intended by the legislature that the proceedings of the selectmen, in perambulating the line and renewing the monuments, should have any greater effect than to furnish new *primâ facie* evidence of its trúe location. By the terms of the statutes in force prior to the revision in 1842, the judgment of the Court of Sessions, or of the Court of Common Pleas upon proceedings in case of a disagreement between the selectmen of the two towns, were to have no greater efficacy. Such judgment, therefore, under those statutes, must be considered not to be conclusive, but merely to constitute evidence to be weighed by the jury, with other evidence upon the matter, whenever the question as to where the true boundary was, was put in issue.

But upon the revision in 1842 the law upon this subject underwent a material change. By sec. 6, ch. 37, Revised Statutes, it is declared that in case of a disagreement by the selectmen, the Court of Common Pleas, on application, shall, by themselves or by a committee, examine the disputed lines, and their decision thereon shall be final, while the force and effect of a perambulation and renewal of the monuments, by agreement of the selectmen, are left as they stood under the preceding acts.

The objects of this change are obvious. In a matter of so great public importance as that of certainty and precision in the boundaries of towns, upon which the right of taxation and jurisdiction in the service of criminal and civil process, the duty of the towns in reference to building and repairing highways, and numerous other powers and liabilities of a public as well as a private character must necessarily depend, it is manifest that

great mischief must result if the question, when any doubt arises upon it, should be left in a precarious or fluctuating condition ; if it should be open to a jury, upon one issue, involving the question where is the town boundary, to find one way, and to another jury upon another issue, involving the same question, to find the other way. Public interests as well as the rights of individuals depending upon the question, require that it be settled by an adjudication directly upon the matter that shall be final and conclusive upon all parties ; and this is provided for by the change in the statute at the revision.

To determine what the effect of the adjudication since the commencement of this suit is to be, as to the rights of the parties involved in it, it is only necessary to understand what the character of the proceeding is under the provisions of the statute which declares it final. It is not a proceeding relating to private transactions, or in a controversy between individuals or particular parties. The adjudication is not directly for the purpose of determining private rights, or deciding a controversy between party and party. It relates to a subject of a public nature, beyond the rights of litigants, and is strictly a proceeding *in rem.* Its object is to declare the state, condition or situation of the subject matter — the true location of the boundary — in a proceeding instituted under the provisions of the law for that object only. In this adjudication it is not merely declared what is to be the recognized and established boundary thereafter. The judgment pronounces where the true boundary is, as established by the only competent authority to limit and define it — the legislative act — or the charter from the government which created the town as a municipal corporation, and prescribed its territorial boundaries. In decreeing where the boundary is, as thus established, it is necessarily declared, also, where it always has been since the proper power was exercised in establishing it by the legislative act, or the grant from the king, if established during our colonial history ; and also where it always will be until altered by like competent authority.

Like the proceedings in the ecclesiastical courts of England,

Pitman v. The Town of Albany.

which decide upon questions of marriage and bastardy, or the courts of exchequer upon condemnations, or the courts of admirality upon questions of prize, this is strictly and purely a proceeding *in rem*, and the judgment, as in all such cases, is conclusive upon all the world. A decree of nullity of marriage or divorce, by this court, upon proceedings for those purposes, and decrees of the courts of probate in allowing wills and the like, are instances of the same character.

Under the provisions of the Revised Statutes the Court of Common Pleas had jurisdiction of the question, where is the true boundary, as established by the proper authority ; and upon a proceeding instituted solely for the purpose of their determining that question. Until such proceedings were instituted and their judgment pronounced, as a common law court, they also might have exercised jurisdiction of the same question, arising incidentally in this suit, and necessary to be determined by submitting it to the jury upon evidence, in order to ascertain the rights of the parties depending upon it. The judgment rendered in this suit would of course be conclusive only upon the parties and their privies. The same question, arising in like manner, incidentally, in another suit between other parties, would be within the common law jurisdiction of the court in the same manner, open to the jury upon evidence. Each new suit, whether growing out of a controversy relating to the taxation of property within the disputed territory, the service of process in it, or injury from a defective highway therein, would open the question afresh, to be determined again by the jury upon the evidence in the particular case. The consequence might follow that one line would be established as the boundary for one purpose and between certain individuals, and another for another purpose and as to other parties. It is to prevent such mischievous results, arising from any uncertainty as to where the boundary is, that the statute wisely provides a mode of determining the question, once for all, in a form that shall forever put the question at rest, by a judgment upon that distinct question in proceedings instituted for that specific object ; a judgment that

shall be final, and binding upon all the world. When this has been done, all private rights and individual interests, depending upon the subject matter of the judgment, must necessarily follow the determination of the question to which they are incident.

It is laid down by Starkie in his treatise on evidence, part 1, sec. 73, that in this class of cases, where decrees or judgments are evidence against a party, though not actually privy to the proceeding in which the judgment or decree is pronounced, one principle on which such evidence is admissible is, that this class of cases is not to be considered as an exception to the general rule that a party is not to be affected by testimony or a judgment founded on that testimony where he has not had an opportunity to cross-examine, and to controvert, because, in most instances of proceedings *in rem*, every one who may be affected by the decision may, if he chooses, be admitted in that proceeding to assert his rights, to cross-examine and to controvert ; and that another principle is that if this class of cases is to be considered as forming such exception, it is a necessary exception, since a final adjudication is absolutely essential to the interests of society, which require that the subject matter should be ascertained and settled ; and it is essential to the existence of such jurisdiction for useful and beneficial purposes, that its adjudications upon the subject matter should be final and binding upon all.

These views are applicable to this case in all their force. Individuals situated as is the plaintiff, in having his private interests involved in a question of this public nature, are presumed to have had opportunity to appear and be heard in the proceeding which resulted in the judgment. But if not, still sound policy requires that the public question which has thus been adjudicated should not be open to him after it has been so adjudicated, because his private interests happen to depend upon it.

The ruling of the court below that the judgment of the Court of Common Pleas, establishing the boundary, is conclusive upon the plaintiff, was correct, and

*Judgment must be rendered upon the verdict.*